IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \| | |
| v. | \| | CRIMINAL CASE NO. |
| JAMAL NICHOLL, | \| | 1:20-CR-00386-JPB-JSA |
| Defendant. | \| | |

## **REPORT AND RECOMMENDATION**

Defendant was burning rubber in a race car on Atlanta streets and arrested for the misdemeanor offense of "laying drag." During the arrest, he was found with a firearm, along with other evidence. This firearm forms the basis of his instant charge. Defendant argues that the police lacked probable cause to arrest him for "laying drag," however, and so he has filed various Motions to Suppress evidence and statements that resulted from the arrest [15][16][17]. Certain of these motions are now moot, as the Government has committed to not introducing certain of the evidence at issue. As to the evidence obtained in the search-incident-to arrest of Defendant's person during his arrest for "laying drag"—which the Government reserves its right to introduce at trial—the Court **RECOMMENDS** that Defendant's Motions be **DENIED**.

1

## I.     FACTS

In the early morning hours of August 16th, 2020, Officer Toombs with the

Field Investigation Team of Atlanta Police Department ("APD") was on patrol in

the Edgewood Avenue area of downtown Atlanta. *See* Transcript, Evidentiary

Hearing [30] ("Tr.") at 8-9. Toombs explained that:

> On that day, pretty much we were given the task to pretty much cut
> down on the cars – it was – it is kind of a movement going on in the
> city of people driving around and doing reckless stuff in vehicles, you
> know, hot rod cars. So we were pretty given the task to just, you
> know, show more visibility and kind of cut back on that. And any
> individual we saw acting reckless in a vehicle, we would pretty much
> arrest them. And that is pretty much what it was.

*Id*. at 9. In other words, APD officers were under a "standing order" reflecting

"absolutely zero tolerance for the – for the reckless behavior with the vehicles at

that time." *Id*.

At some point that morning, Officer Toombs was traveling westbound on

Edgewood Avenue and observed the following:

> we saw a cloud of smoke. And it was traveling -- it was continually
> coming towards my direction westbound on Edgewood Avenue. And
> we could tell that it was a vehicle laying drag because you could
> actually hear it. You could hear the tires, you know, on the -- on the
> road burning his tires at the time.
>
> So as I continued to sit and look down in the direction eastbound on
> Edgewood, you could see the vehicle continuously coming closer
> towards in our direction. And once -- once the vehicle came by us,
> which was an orange Challenger, you could see a large cloud of
> smoke following the vehicle.

*Id*. at 10.

APD Officer Doherty was also patrolling in the vicinity and responded to Officer Toombs's radio alert. *Id*. at 40-41. Officer Doherty independently observed the Challenger burning its tires in traffic, and he responded to assist Officer Toombs with the arrest. *Id*.

Officer Toombs activated his lights and pulled the Challenger over. *Id*. at 11. The Defendant, the driver, stated that he had "activated the line lock feature on his vehicle," that is, a feature on the Dodge Challenger that "locks your back tires, and it prepares your vehicle to burn pretty much because it allows you to lock your back tires and allows you to burn your tires out preparing -- which would pretty much prepare you for a drag, if you were going to go straight down the track at a top speed -- at high speed." *Id*.[1]

Officer Toombs understood this conduct to constitute Georgia's misdemeanor violation of "laying drag," under O.C.G.A. 40-6-251 ("No driver of any motor vehicle shall operate the vehicle upon the public streets, highways, public or private driveways, airport runways, or parking lots in such a manner as to create a danger to persons or property by intentionally and unnecessarily causing

---

[1] Officer Toombs described the line-lock feature as locking the back tires, but the Court understands from the entirety of all of the evidence, including the testimony of Defendant's expert, that it is actually the front wheels that are locked, while the back tires are allowed to spin freely. This detail is immaterial to the motion.

the vehicle to move in a zigzag or circular course or to gyrate or spin around, except to avoid a collision or injury or damage.") According to Officer Toombs, this violation is triggered by "pretty much just burning your tires to the point where it will actually leave a mark on the ground, you know." *Id*. at 12.

Officer Toombs did not testify that he observed the Challenger swerving or zigzagging. Officer Toombs perceived that the principal issue was that the car was "burning out the tires in the streets," which he described as a "headache." *Id*. at 37. According to Toombs, "I guess if we are going technically by the law, it may not be reckless driving by you laying – by you burning your tires. So I guess you can't say verbatim that it is reckless driving by you burning your tires." *Id*. Officer Doherty stated that he saw the Challenger moving in a forward, not zigzagging, direction, *id.* at 47, and he was not aware of anyone "directly in harm's way" at the time of the conduct. *Id*. at 51. Nevertheless, Doherty stated that the street was busy with other cars and pedestrians, and he described the Defendant's practice of locking the front and burning out the back tires on a busy city street as "reckless driving," i.e., "disregard of persons or property," because "you can lose control of the vehicle." *Id*. Ultimately, Defendant was cited and arrested for "laying drag," under O.C.G.A. § 40-6-251 and not the broader offense of "reckless driving" under O.C.G.A. § 40-6-390. During the arrest, Defendant was removed from the car and

frisked, and was found to be carrying, among other things, a concealed firearm and a large amount of cash in his waistband. *Id*. at 15.[2]

The Defendant called an expert witness, Eric Shelton, to explain the line-lock feature and the practice of burning tires. Shelton explained that racers lock their front tires and burn their back tires in preparation to race, because this helps make rubber stickier and have more traction during the fast speeds of a race. *Id*. at 57-61. According to Shelton, when wheels are locked and burning, the car is generally stationary. *Id*. Shelton stated that if the driver mistakenly disengages the line-lock while still supplying gas, the car may move forward, and the rear of the car may veer to one side or the other. *Id*. at 73-74. Shelton opined, however, that a car would not move in a zigzag or circular manner while the line-lock were engaged. *Id*. at 61-62. Shelton acknowledged that it would not be prudent to do a line-lock and tire burnout on a busy city street, because this is a maneuver appropriate only for race courses and that "[s]omething could fail." *Id*. at 64.

## II.    DISCUSSION

The APD conducted a search incident to Defendant's arrest and thereby obtained various items including a firearm. Defendant argues that the police lacked

---

[2] Defendant also made incriminating statements and Officer Toombs found other evidence, including a rifle, pursuant to a subsequent "inventory" search of the car. The Government represents that it will not introduce any of this evidence at trial, and therefore the Court declines to further detail the facts or analyze the legal issues regarding the statements or inventory search as these issues are moot.

probable cause to arrest him and therefore had no basis to engage in a warrantless search incident-to-arrest.

A warrantless arrest is constitutionally valid only when there is probable cause to arrest. *See United States v. Watson*, 423 U.S. 411, 417 (1976); *United States v. Costa*, 691 F.2d 1358, 1361 (11th Cir. 1982). Probable cause exists if, "at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense." *Dahl v. Holley*, 312 F.3d 1228, 1233 (11th Cir. 2002) (*quoting Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972). In determining whether probable cause exists, the Court "'deal[s] with probabilities . . . [which] are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (*quoting Brinegar v. United States*, 338 U.S. 160, 175 (1949)). Moreover, an officer is not required to resolve all inferences and all factual conflicts in favor of the suspect. "An officer's decision to arrest a suspect may be objectively reasonable even though that officer has not specifically discarded every possible non-criminal explanation for the conduct that forms the basis for her

decision to arrest a suspect." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1119 n.5 (11th Cir. 1992); *United States v. Pantoja-Soto*, 739 F.2d 1520, 1523-24 (11th Cir. 1984).

Defendant argues that the officers lacked probable cause to believe that Defendant was "laying drag" in violation of O.C.G.A. § 40-6-251. Both Toombs and Doherty observed Defendant's car burning its back tires in actions that can be preparatory to drag racing, but both officers saw the car remain essentially stationary, or at least moving in a straight line. Neither officer saw the car driving in a zigzagging or circular manner. Defendant argues that his actions burning tires while stationary and/or while moving forward in his own lane did not constitute the Georgia violation of "laying drag."

The Court agrees that the officers did not have probable cause to arrest Defendant for "laying drag." Officer Toombs seemed to believe that the statute is applicable anytime someone burns their tires to make a mark on the street. While it might be prudent for that activity to be included in the definition of illegally "laying drag," the fact is that it is not included. The statute is limited to "intentionally and unnecessarily causing the vehicle to move in a zigzag or circular course or to gyrate or spin around, except to avoid a collision or injury or damage." O.C.G.A. 40-6-251. Nothing in this language applies solely based on burning of tires or spinning tires while stationary. As Shelton explained, those actions might

cause loss of control and fishtailing or other movements, but those circumstances would generally only occur if something were to fail or the user were to improperly disengage it, not presumably if the line-lock was being used properly.

Thus, the locking and burning of tires does not itself fall under the statutory language of "laying drag," and while it creates a risk of spinouts and other loss of control, there is no reason to conclude that such circumstances have *probably* happened or are currently happening based only on observing tires burning. In other words, the officers did not observe, or have reason to believe that it was probable, that the car had engaged in the sort of movements necessary to constitute "laying drag," and therefore lacked probable cause to arrest Defendant for this offense.

The Government argues that the probable cause does not necessarily require the officers to observe every element of the offense being violated. That is true. However, the officers must still have reason to believe or infer that the offense has likely taken or is taking place. The Court cannot find that the officers had reason to conclude or infer that the car had likely engaged in zigzagging, circular, or gyrating movements as seemingly required by the plain language of the statute.

The Government's brief refers to the standard of reasonable suspicion. Although the officers lacked probable cause to arrest Defendant for "laying drag," the Court agrees that they had at least enough to conduct an investigatory traffic

stop. *See Terry v. Ohio* , 392 U.S. 1 (1968). However, reasonable suspicion of "laying drag" does not ultimately assist the Government's position. The Government's task is to justify not just the initial traffic stop but, in addition, the subsequent frisk and search that yielded discovery of the gun and cash in Defendant's waistband. There is no evidence to suggest that the officers were able to observe these items based solely on the traffic stop itself. As the Supreme Court has explained in the context of investigative vehicle stops, "to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 326-327 (2009). The Government has not presented any evidence to suggest that Toombs or Doherty specifically suspected Defendant to be armed and dangerous. Thus, reasonable suspicion of "laying drag" alone would not justify the frisk and recovery of the gun from Defendant's waistband.

However, the lack of probable cause to support an arrest for "laying drag" does not end the analysis. The Government alternatively argues that even if the "laying drag" statute did not expressly apply, the arrest was nevertheless supported by probable cause of another, related, offense, that is, the more general offense of "reckless driving." As this Circuit has stated, "[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor

his verbal announcement of the wrong offense vitiates the arrest." *United States v. Saunders*, 476 F.2d 5, 7-8 (5th Cir. 1973) (that officers lacked probable cause to support the specific ground articulated for an arrest, i.e., harboring and concealing, did not vitiate legality of the arrest when facts existed to support probable cause on another basis, i.e., possession of marijuana, even though the arrested officers did not purport to arrest on that basis)[3]; *see Lee v. Ferraro*, 284 F.3d 1188, 1195-96 (11th Cir. 2002) (Relying on *Saunders* to find an arrest properly supported by probable cause, albeit for a different offense not articulated at the time by the arresting officer). The Government characterizes this argument as falling under the doctrine of "inevitable discovery," which allows the Government to "introduce evidence that was obtained by an illegal search if the government can establish a 'reasonable probability that the evidence in question would have been discovered by lawful means.'" *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir. 2015) (*quoting Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004)).

APD's sloppiness in misunderstanding the scope of the "laying drag" statute confuses this matter and makes the analysis more complicated and difficult than it should be. Nevertheless, as in *Saunders*, the Court ultimately agrees that focusing on whether the conduct identified by Toombs and Doherty fell within the technical

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

scope of just the "laying drag" statute is too narrow. The officers were focused

more generally on the epidemic of reckless driving in this neighborhood with "hot

rod" or muscle cars. Toombs characterized the arrest as being part of the APD

"standing order" to apply "zero tolerance" to "reckless behavior with the vehicles

at that time." Tr. at 9. Thus, the Court believes that it is proper to look more

generally as to whether probable cause supported the arrest under the broader,

more all-encompassing penumbra of "reckless driving," even if not specifically for

"laying drag."

Under O.C.G.A. § 40-6-390(a), "[a]ny person who drives any vehicle in

reckless disregard for the safety of persons or property commits the offense of

reckless driving." Confusingly, the two officers offered somewhat contradictory

statements on whether the events they observed constituted reckless driving.

Toombs stated that "I guess if we are going technically by the law," burning tires is

not "verbatim" reckless. Tr. at 12. Toombs also did not issue a citation for reckless

driving, although he initiated the arrest for "laying drag" in furtherance of the

overall "standing order" against reckless conduct in vehicles.

Doherty's testimony was stronger on this point. While acknowledging that

he did not observe anyone immediately in danger, he stated that locking and

burning tires on a busy urban street inherently shows "disregard of persons and

property," because the driver could lose control. *Id*. at 51. Doherty's view is

corroborated by Shelton, who explained that line-locking and burning rubber is not appropriate for busy, urban streets, and that the back end of the car could veer in unintended ways if the lock were to disengage too early.

While the officers' testimony on this front is muddled, the Court finds that the facts objectively constituted probable cause of reckless driving. As even Defendant's own expert acknowledged, spinning and burning the back wheels as if about to shoot out in a drag race on a busy urban street with pedestrians and other cars is unwise. This foolish act might not result in actual harm in a specific instance, but there is a clear and inherent risk that it might do so, such as if the function were to fail, or the operator were to disengage the lock too soon, or for other reasons. It is hard to understand how gunning the back wheels of a racing "muscle" car on a busy city street would not qualify as at least showing "disregard" for the safety of others, and/or for property, even if no accident were actually to happen. At a minimum, the burning of marks on the public property of the roadway itself would seem to pose disregard for property.

Thus, the arrest was objectively justified based on the facts known to the officers, albeit on a different (but related) legal basis than the one specifically cited. That is, the arrest was justifiable based on the broader umbrella prohibition against "reckless driving." As under *Saunders* and related precedents, the Court does not see this technical distinction between the offense cited at arrest (laying

drag) and the related offense for which probable cause objectively existed (reckless driving) as justifying suppression.

The Court is also not convinced that this theory falls under the category of "inevitable discovery." That theory would apply if the arrest were illegal, but if the Government could prove that the investigation would have inevitably yielded discovery of the evidence through some other investigative act that was highly probable. Here, the Court finds that the arrest itself was justified and lawful, but simply based on a different (albeit similar) legal conclusion than that cited by the officers. *Saunders* did not specifically cite to the inevitable discovery doctrine, and the Court does not perceive it necessary to find that the elements of that doctrine necessarily all apply.

Nevertheless, in the alternative, the Court would find that "inevitable discovery" applies. The key inquiry with "inevitable discovery" is whether the alternative, legal, basis for the challenged search was already underway and whether the officers already had the motivation to pursue that alternative prior to and independent of the illegal action. Those considerations apply here. The officers both explained that they were operating under orders or directions to crack down on reckless driving in this area of town. In other words, their focus was already on conducting stops and arrests for this sort of conduct. This "zero tolerance" practice pre-existed and was entirely independent of anything learned in the arrest itself.

Thus, for all these reasons, the Court finds suppression to be unwarranted, even though probable cause technically did not exist on the specific basis of "laying drag."

**CONCLUSION**

Defendant's Motions to Suppress [15][16][17] should be **DENIED**. This case is now **READY FOR TRIAL**.

IT IS SO **ORDERED** this 10th day of August, 2021.

_____
**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**