UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMAL NICHOLL,<br><br>Defendant. | CRIMINAL ACTION NO.<br>1:20-CR-00386-JPB-JSA-1 |

### ORDER ON REPORT AND RECOMMENDATION

This matter is before the Court on the Magistrate Judge's Report and Recommendation [Doc. 40]. This Court finds as follows:

### BACKGROUND

In the early morning of August 16, 2020, Amasiah Toombs, an officer with the Atlanta Police Department ("APD"), was on patrol in the Edgewood Avenue area of downtown Atlanta. [Doc. 40, p. 2]. Officer Toombs was tasked with identifying and arresting individuals who were "acting reckless[ly] in a vehicle." [Doc. 30, p. 10]. While on patrol, Officer Toombs observed a cloud of smoke "coming towards [his] direction westbound on Edgewood Avenue" and "could tell that it was a vehicle laying drag" based on the sound of the tires. Id. at 11. Another APD officer, Michael Doherty, responded to the scene and independently observed the car—a Dodge Challenger—burning its tires. [Doc. 40, p. 3]. Officer

Toombs pulled the Challenger over.  Id.  Jamal Nicholl ("Defendant"), the driver, explained that he had activated the line lock feature on the Challenger.[1]  Id.

Officer Toombs believed that Defendant's conduct constituted "laying drag" in violation of O.C.G.A. § 40-6-251.  Id.  Under that provision, it is a misdemeanor to "create a danger to persons or property by intentionally and unnecessarily causing the vehicle to move in a zigzag or circular course or to gyrate or spin around, except to avoid a collision or injury or damage."  O.C.G.A. § 40-6-251.  Officer Toombs explained that he understood "laying drag" to mean "pretty much just burning your tires to the point where it will actually leave a mark on the ground."  [Doc. 30, p. 13].

Officer Toombs testified that he observed Defendant "burning his tires out." Id. at 36.  However, he did not testify that he observed the Challenger zigzagging, swerving or spinning around.  Officer Doherty testified that the Challenger "stayed in a straight line," id. at 49, and that he was unaware "if anyone was directly in

---

[1] During an evidentiary hearing held by Magistrate Judge Justin S. Anand, referenced infra, Defendant called an expert witness, Eric Shelton, to explain the line lock feature and the practice of burning tires.  See [Doc. 30, p. 53].  Shelton explained that the line lock feature locks the front tires of a car without engaging the brakes, allowing the rear tires to turn.  Id. at 59.  The rear tires spin and become hot, which in turn allows them to adhere more easily to the road.  Id.  When the feature is engaged, "the car is standing still."  Id. at 62.  Shelton explained that he "[did not] see how" a car with the line lock engaged could move in a zigzag or circular pattern.  Id. at 62–63.

2

harm's way," id. at 52. He further stated that burning tires "can be considered possibly reckless driving" because it exhibits "[d]isregard of persons or property" and because of the possibility that the driver may lose control of the vehicle. Id. at 52. Officer Doherty could not recall if there were pedestrians "in front of the car" but testified that there were many pedestrians in that area of town, as well as other cars on the street. Id. Officer Toombs, on the other hand, testified that "going technically by law," burning tires "may not be reckless driving." Id. at 38.

Consequently, Officer Toombs arrested Defendant for "laying drag" under O.C.G.A. § 40-6-251.[2] [Doc. 40, p. 4]. Officer Toombs patted down Defendant and felt "a bulge in his pocket" that he "immediately recognize[d]" as a firearm.[3] [Doc. 30, p. 16].

On October 13, 2020, a grand jury indicted Defendant for violations of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [Doc. 1]. Defendant filed a Motion to Suppress Statements, [Doc. 15], and a Motion to Suppress Evidence, [Doc. 16], on February 8, 2021. Defendant filed an Amended Motion to Suppress Evidence on

---

[2] As relevant here, Officer Toombs did not arrest Defendant for the offense of reckless driving under O.C.G.A. § 40-6-390.
[3] Defendant objected to the Magistrate Judge's finding that Defendant carried the firearm in his waistband. See [Doc. 40, p. 5]. The Court agrees that the transcript from the evidentiary hearing supports the conclusion that the firearm was found in Defendant's pocket. As such, Defendant's objection on this ground is **SUSTAINED**.

3

March 9, 2021. [Doc. 20]. In those motions, Defendant argued that the officers lacked probable cause to arrest him for laying drag and sought to suppress statements given and evidence obtained subsequent to that arrest. Magistrate Judge Justin S. Anand held an evidentiary hearing on Defendant's motions on April 20, 2021. See [Doc. 28], [Doc. 30]. On August 10, 2021, the Magistrate Judge issued a Report and Recommendation recommending that Defendant's motions be denied. [Doc. 40]. Defendant filed objections to the Report and Recommendation on August 24, 2021. [Doc. 42].

## ANALYSIS

**A.     Legal Standard**

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard. Notably, a party objecting to a recommendation "must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). Placing this burden on the objecting party "'facilitates the

opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act.'" United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Nettles v. Wainwright, 677 F.2d 404, 409–10 (5th Cir. Unit B 1982)).

### B.     Defendant's Objections

In the Report and Recommendation, the Magistrate Judge determined that the officers lacked probable cause to arrest Defendant for laying drag. The Magistrate Judge concluded, however, that the officers had probable cause to arrest Defendant for reckless driving. Finally, the Magistrate Judge found that the inevitable discovery doctrine would alternatively apply to justify the challenged search.

Defendant objects to the Report and Recommendation on several grounds. Defendant argues that the Magistrate Judge erred by:  (1) analyzing his conduct under the reckless driving statute rather than doing so under the laying drag statute alone; (2) concluding that the officers had probable cause to arrest him for reckless driving; and (3) finding that the inevitable discovery doctrine applied. The Court will address these objections below.

### 1. *Consideration of Reckless Driving Statute*

The Magistrate Judge concluded that "focusing on whether the conduct identified by [Officers] Toombs and Doherty fell within the technical scope of just the 'laying drag' statute is too narrow." [Doc. 40, pp. 10–11]. The Report and Recommendation thus "look[ed] more generally as to whether probable cause supported the arrest under the broader, more all-encompassing penumbra of 'reckless driving,' even if not specifically for 'laying drag.'" Id. at 11. Defendant objects to this approach and argues that "the focus should remain on what [he] was cited for, which was laying drag." [Doc. 42, p. 2].

When assessing whether an officer had probable cause for an arrest, courts are not limited to a consideration of whether probable cause existed for the specific offense cited by the officer. "Quite simply, '[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest.'" Lee v. Ferraro, 284 F.3d 1188, 1195–96 (11th Cir. 2002) (alteration in original) (quoting Bailey v. Bd. of Cnty. Comm'rs, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992)). Stated another way, if an officer has probable cause to arrest for a specific offense, "neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." United States v. Saunders,

476 F.2d 5, 7 (5th Cir. 1973).[4]  Defendant's argument is not supported by legal authority, and he provided no case law to lead this Court to a contrary conclusion. Therefore, it was not error for the Magistrate Judge to decline to focus solely on the offense for which Defendant was cited when assessing whether probable cause existed for the arrest.  Defendant's objection on this ground is **OVERRULED**.

### 2. *Probable Cause for Reckless Driving*

The Magistrate Judge concluded that although Officers Toombs and Doherty presented conflicting testimony on this point, "the facts objectively constituted probable cause of reckless driving." [Doc. 40, p. 12].  Defendant objects to this conclusion on various grounds.

An officer has probable cause to arrest when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Wilkerson v. Seymour, 736 F.3d 974, 978 (11th Cir. 2013) (quoting Lee,

---

[4] "[D]ecisions of the United States Court of Appeals for the Fifth Circuit . . . handed down by that court prior to the close of business on [September 30, 1981], shall be binding as precedent in the Eleventh Circuit." Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

7

284 F.3d at 1195).⁵  Probable cause does not require evidence of each element of the offense; instead, courts "will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action." Adams v. Williams, 407 U.S. 143, 149 (1972).  The standard for probable cause "requires that an arrest be objectively reasonable under the totality of the circumstances." Bailey, 956 F.2d at 1119.

Under O.C.G.A. § 40-6-390(a), "[a]ny person who drives any vehicle in reckless disregard for the safety of persons or property commits the offense of reckless driving."  An individual may commit this offense "in a variety of ways, and the [s]tate need only present evidence that the defendant drove 'in a manner exhibiting reckless disregard for the safety of persons or property.'" Hughes v. State, 659 S.E.2d 844, 846 (Ga. Ct. App. 2008) (quoting Wilson v. State, 607 S.E.2d 147, 149 (Ga. Ct. App. 2004)).

*i.     Reliance on "Standing Order"*

Defendant argues that the Magistrate Judge erred by "relying on a so-called 'standing order' to stop reckless driving with 'hot rod' or muscle cars" because the Government introduced no evidence of this order.  [Doc. 42, p. 2].  The Magistrate

---

⁵ The standard for probable cause is the same under Georgia law.  See Caffee v. State, 814 S.E.2d 386, 392 (Ga. 2018).

Judge did refer to this purported "standing order" on the pages cited by Defendant in his objections. However, Defendant offers no legal authority for the proposition that the Government must provide written corroboration of the patrol instructions given to officers.[6] As such, Defendant's objection to the Magistrate Judge's reliance on the alleged standing order is **OVERRULED**.

    *ii.    Conclusion as to Moving Traffic Violation*

Defendant objects to any conclusion that he committed a moving traffic violation because "using the line lock feature requires using the brakes to make sure the vehicle is stopped." Id. Defendant's expert testified that a car with the line lock engaged "shouldn't move." [Doc. 30, p. 61]. However, the record reflects that Defendant's vehicle was in motion for at least some portion of the incident in question. Officer Toombs testified that he "could see the vehicle

---

[6] Upon review of the record, the Court does not believe that any formal standing order exists or was alleged to exist. During the evidentiary hearing, Officer Toombs explained that he was "given the task" to address reckless driving. [Doc. 30, p. 10]. When subsequently questioning Officer Toombs, the Assistant United States Attorney referred to this instruction as a "standing order." Id. The Report and Recommendation then adopted this language. See, e.g., [Doc. 40, p. 2] ("[Officer] Toombs characterized the arrest as being part of the APD 'standing order' to apply 'zero tolerance' to 'reckless behavior with the vehicles at that time.'"). The Court understands Officer Toombs' testimony to reflect the instructions he was given on patrol rather than any kind of formal order that was reduced to a written policy. Officer Doherty's testimony confirms this understanding; he stated that this policy was not written on paper but that "there [were] orders by supervisors" to arrest individuals exhibiting such behavior and to impound their vehicles. [Doc. 30, p. 49].

continuously coming closer towards . . . our direction" and that once the vehicle passed by the officers, "a large cloud of smoke follow[ed] the vehicle." Id. at 11. Officer Doherty also testified that Defendant's vehicle was moving, explaining that the Challenger would "burn[] its tires" then "move up a little bit." Id. at 42. For these reasons, Defendant's objection as to the moving traffic violation is **OVERRULED**.

### iii. *Sufficiency of Officer Doherty's Testimony*

Defendant contends that Officer Doherty's testimony did not establish probable cause of reckless driving, particularly because Officer Doherty testified that Defendant drove in a straight line and that he did not know "if anyone was directly in harm's way at that moment." Id. at 52. Per Defendant, "[t]he fact that [he] was on an urban street without any specifics as to how busy it was or any testimony that any other person was at risk cannot establish probable cause of reckless driving." [Doc. 42, p. 2].

The Court finds that Officer Doherty's testimony was sufficient to establish probable cause of reckless driving. First, Defendant is incorrect that there were no "specifics" about how busy the street was. Officer Doherty could not recall whether any pedestrians were "directly in front of [Defendant's] car," but he stated that the area "is a bar district" with many pedestrians and that "there was a lot of

10

traffic."[7] [Doc. 30, p. 52]. Second, Officer Doherty explained that Defendant's conduct constituted reckless driving because he "[could] lose control of the vehicle." Id. at 52. Officer Doherty's testimony reflects that the "circumstances at the time of the arrest" were sufficient for probable cause. Adams, 407 U.S. at 149. Consequently, Defendant's objection as to Officer Doherty's testimony is **OVERRULED**.

      *iv.    Determination of "Clear and Inherent Risk"*

Defendant objects to the Magistrate Judge's "conclusion that using the line lock feature presented a 'clear and inherent risk.'" [Doc. 42, p. 3]. Defendant argues that the line lock feature was "standard" in the Challenger and that there was no evidence of mechanical problems with his vehicle or that he used the feature improperly. [Doc. 42, p. 3].

However, the Magistrate Judge did not appear to conclude that using this feature alone constituted an inherent risk. Instead, he determined that "spinning and burning the back wheels as if about to shoot out in a drag race on a busy urban street with pedestrians and other cars is unwise"[8] and that "there is a clear and

---

[7] Officer Toombs' testimony corroborated Officer Doherty's observations. Officer Toombs testified that the area at issue had many clubs and bars, that people were in the area and that other cars were driving on the road. [Doc. 30, pp. 28–29].

[8] Defendant argues that his expert witness "did not testify . . . that [Defendant] was 'about to shoot out in a drag race on a busy urban street.'" [Doc. 42, p. 3]. This is true, but

11

inherent risk" that this behavior might result in actual harm.[9] [Doc. 40, p. 12]. The testimony of the officers at the scene and of Defendant's own expert supports this conclusion. Both Officer Toombs and Officer Doherty testified that Defendant was burning his tires in a stop-and-start fashion. According to Officer Toombs, Defendant "would burn out a little and then stop." [Doc. 30, p. 26]. Likewise, Officer Doherty testified that Defendant's vehicle "was burning its tires, and it was in traffic" and that Defendant "would do it, move up a little bit" then "[do] it again." Id. at 42. Driving in this manner, especially when it produces a considerable amount of smoke, seems to pose a clear risk of harm by impeding the flow of traffic and potentially obstructing the views of other drivers with smoke. Additionally, Defendant's expert testified that "[u]sing a line lock on the street is not a real wise thing to do." Id. at 71. He explained that doing so could frighten someone and was unwise because "[s]omething could fail." Id. Whether simply

---

Defendant's expert testified that the purpose of the line lock feature "is to do a burnout at a dragstrip to launch your car. That it what it is made for." [Doc. 30, p. 71]; see also id. at 59–62 (explaining how a line lock prepares a car for drag racing). Given the purpose of the line lock feature, it is not illogical to characterize Defendant's use of the line lock and subsequent burning of his tires as if those actions were precipitating a drag race.

[9] The Magistrate Judge also observed that "[a]t a minimum, the burning of marks on the public property of the roadway itself would seem to pose disregard for property." [Doc. 40, p. 12]. Defendant objected to this conclusion because "there was no evidence that the Challenger left marks on public property." [Doc. 42, p. 3]. The Court does not see any evidence or testimony in the record that Defendant left marks on the street. As such, Defendant's objection on this ground is **SUSTAINED**.

using the line lock feature without any aggravating circumstances (such as heavy traffic, pedestrians or mechanical issues) presents a "clear and inherent risk" is uncertain. However, using this feature to stop and start, burn tires and expel smoke, in an area with traffic and pedestrians, constitutes a "clear and inherent risk" of harm. Defendant's objection on this ground is therefore **OVERRULED**. For the foregoing reasons, the Court agrees with the Magistrate Judge that probable cause of reckless driving supported Defendant's arrest.

### 3. *Inevitable Discovery Doctrine*

The Magistrate Judge concluded that despite the determination that the officers had probable cause of reckless driving, the inevitable discovery doctrine would alternatively justify the search. Defendant objected to this conclusion. However, because the Court determined above that Defendant's arrest was supported by probable cause, the Court need not address the inevitable discovery doctrine or Defendant's objection pertaining to its application.

## CONCLUSION

For the reasons stated above, Defendant's objections [Doc. 42] are **OVERRULED IN PART** and **SUSTAINED IN PART**. The Report and Recommendation [Doc. 40] is **ADOPTED IN PART** as the order of this Court. Defendant's Motion to Suppress Statements, [Doc. 15], Motion to Suppress

Evidence, [Doc. 16], and Amended Motion to Suppress Evidence, [Doc. 20], are **DENIED**.

**SO ORDERED** this 11th day of February, 2022.

J. P. BOULEE
United States District Judge